## SMITH v. TRI–STATE TRANSIT CO. OF LOUISIANA, Inc., et al. and three other cases.*

### Nos. 5317–5320.

Court of Appeal of Louisiana. Second Circuit.

Dec. 11, 1936.

Bernstein, Clark & Thompson, of Monroe, for appellants.

J. B. Thornhill and S. E. Burgoyne, both of Monroe, and N. B. Crawford, of El Dorado, Ark., for appellees.

HAMITER, Judge.

The causes of action alleged upon in these four consolidated cases grew out of a collision between defendant's passenger bus and the Chevrolet coupé of plaintiff, Guy Smith, then being driven by his wife, Mrs. Mamie Crawford Smith, on the Dixie-Overland Highway, 18 miles west of the

*Rehearing granted Feb. 5, 1937.

city of Monroe. The accident occurred at 5:15 p. m., January 20, 1934, about 760 feet west of the east end of an 1,160-foot gradual, upgrade tangent. Visibility in both directions was not materially obscured. The coupé was traveling easterly; the bus, on schedule time, was going west. In addition to Mrs. Smith, the cargo of the coupé consisted of her sister, Mrs. White, a plaintiff, and her four small girls; one, age 9, occupied the front seat between her mother and Mrs. Smith; another, age 4, was standing up at her mother's right; another, age 6, reclined in the elevated space back of the seat; while the baby, age 2, rested on its mother's lap. The bus, of 30-passenger capacity, was fairly well loaded. Heavy rains had fallen during the day and a light shower was falling at the time of the collision. The surface of the concrete road was well soaked, being conducive to skidding. The shoulders, composed of not well-settled earth, were soft and unstable. Mrs. Smith and Mrs. White sue defendant and its insurer to recover damages for physical injuries and suffering experienced by them in and from the accident. Guy Smith sues to recover the amount he expended to repair the coupé and for physicians', sanitarium, and drug bills necessarily incurred to relieve his wife's injuries. Ralph White, father of the little girls, seeks to recover damages for injuries three of them sustained, and for doctors', drug, and other bills incurred in treating them and Mrs. White for their injuries.

The gravamen of the petitions is virtually identical. It is that defendant's bus operator drove his machine at an excessive, unreasonable, and unlawful rate of speed, in excess of 45 miles per hour, in attempting to overtake and pass a passenger car, while approaching the crest of a hill and while turning a curve at a time when his view was obscured; and that in doing so, the bus was being driven on the left (south) side of the center of the highway at a time when and place where that side of the road was not clearly visible and free from on-coming traffic for a sufficient distance ahead to safely permit the overtaking and passing of cars. They rely upon subsections (c) and (d) of rule 7 of section 3, title 2, of Act No. 21 of 1932, which read as follows:

"(c) The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direc-

tion, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety; provided, that whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing.

"(d) The driver of a vehicle shall not overtake and pass another vehicle proceeding in the same direction, approaching the crest of a hill or substantial grade, or upon a curve in the highway or elsewhere, where the view of the driver doing the overtaking or passing is obstructed within a distance of five hundred (500) feet."

Defendant denies that the accident in whole or in part was attributable to any negligence or lack of care of its servant, and therefore denies liability to either plaintiff. It avers that as the coupé emerged into view at the top of the hill at the western end of the 1,160-foot tangent, it was astride the medial black line of the road, and as it approached the bus, it was pulled over toward its right side, close to the center; that it then began to skid first to its left and then to its right, executing in order three different movements of this character, and at the completion of the third one, the vehicles collided on the north side of the concrete part of the road, the side on which the bus then had the right to be. It is additionally averred that the bus's operator, as soon as he observed the coupé skidding, applied the brakes and steered the bus to the extreme right (north) side of the road, and that it was moving slowly with the right wheels on the soft dirt shoulder when the collision occurred; that said collision happened solely because Mrs. Smith lost control of her car when she suddenly and imprudently applied the brakes while running at a too rapid speed on wet and slippery pavement, a contributing cause of such loss of control, it is averred, being the unreasonably crowded condition of the coupé, designed to carry only two persons. These alleged acts of negligence are also, in the alternative, advanced as a bar to a recovery by Mrs. Smith and Mrs. White and their husbands. All plaintiffs were awarded judgments in the lower court. The bus company and its insurer, Central Surety & Insurance Corporation, appealed.

As plaintiffs' cases are entirely buttressed upon the charge that defendant's operator violated the traffic laws by attempting to pass another car when too close to the crest of the hill ahead of him, thereby creating an emergency resulting in the accident, they must succeed or fall upon the verity or lack of verity of the charge. A question of fact only is involved in the proposition. That question was resolved in favor of plaintiffs by the trial judge, but we, after a studious consideration of the testimony in the case and after ascribing to the lower court's decision the usual degree of weight due trial judges' rulings on factual questions, find ourselves unable to affirm his conclusions thereon. We are left in no doubt whatever on the paramount question in the case. The testimony of numerous disinterested witnesses who saw the accident convinces us that at most the bus's passing the car when and where it did had very little if any influence on the collision, and that the car was passed when more than 500 feet from the crest of the hill, looking westerly, and that the bus had regained its side of the road at the moment of impact.

At the east end of the 1,160-foot tangent, the highway is traversed by a culvert. Immediately after clearing this culvert, the bus began to execute the usual movements to pass a passenger car directly ahead of it. The evidence fairly well establishes that it required but 75 yards to do this. That the effort was completed successfully before the impact is beyond question, because all witnesses, excepting one, agree that the passed car was at a stop 25 feet to the rear of the bus following the collision. The testimony also establishes beyond any doubt that the collision actually occurred not over 50 feet west of a metal sign on the roadside bearing the legend, "Monroe—18 miles," and it is not disputed that this sign is 445 feet from the crest of the hill over which the coupé came. Therefore we may safely conclude that the situs of the collision is not less than 400 feet from the hill's crest. It follows unquestionably, as the majority of the witnesses say, that the bus was well toward the culvert when it began to pass the other car, and by simple deduction it becomes clear that at that time the coupé was not in sight. These facts being well established, the charge that defendant's operator violated the above-quoted sections of the highway traffic regulation act falls.

We shall briefly discuss the testimony given by the witnesses of both sides from which we draw the conclusions above announced.

Mrs. Smith testified that she first saw the bus as her car reached the crest of the hill; that it was then running very fast and passing a car down the road, but she did not estimate the distance; that she was on her side of the road; that she applied her brakes to prevent a head-on collision, which caused her car to skid only once and then to her left side; that she then straightened it out on the road and at that time the collision occurred. If this is correct, she had traversed over 125 yards since applying the brakes. She says the rear end of the left side of the bus struck the left rear part of the coupé; that at this time the rear end of the bus was on its left (south) side of the black medial line of the highway; that her car's right wheels were on the south shoulder. If her car had been in this position, there would have been no collision, as all witnesses agree that the front end of the bus was well north of the black line. Her testimony is corroborated by that of Mrs. White. They are palpably in error as to where the coupé contacted the bus. Its left rear corner (about the wheel and fender) struck the left end of the bus's front bumper, its left fender and left wheel. Physical evidence of the injury to the vehicles removes all doubt of this. None of the children in the car testified. Three occupants of a car following the bus approximately 75 yards testified on behalf of plaintiffs. The driver of this car states that he was 150 to 200 yards from the coupé when it came over the crest and that the bus was practically midway between them, but qualifies this statement by adding that the bus was only 50 yards away when the coupé came from over the hill. He states that the bus was traveling 50 miles per hour as it approached the coupé. This witness' appreciation of distances is wholly inaccurate. The accident occurred about 150 yards east of the crest of the hill, yet he would have us believe the bus was 50, 75, or 100 yards from the coupé when passing the car and when the coupé came into sight. He says Mrs. Smith applied her brakes as she came over the hill; that her car skidded to the left and it was then turned to its right; that none of the wheels was on the shoulder when the collision happened, and that just before the collision, the bus, which he says had been traveling on its left side of the road, was pulled sharply to the right and "the front wheels seemingly on the shoulder and the back wheels seemingly on his side of the

line, but the back end of the bus extended over somewhat"; that the bus was at a 20-degree angle to the road. He admits both cars were somewhat at an angle to him and his view partially obscured. He also admits that the bus began to pass a car as it crossed the culvert and that it required 75 yards to do so. If this is true, and we feel that it is, there remained approximately 900 feet of the tangent in front of the bus, yet he says the bus was still on its left side of the road when within 300 feet of the hill. Other discrepancies in this witness' testimony could be pointed out to emphasize its lack of dependability. His testimony, in a general way, is corroborated by W. T. Williams, one of the other two passengers with him. Williams says the collision occurred 30 or 40 yards from the hill's crest. He disagrees with his driver in that he states that when the collision occurred the back right wheels of the bus were to the left of the black line. He says that the coupé struck the bus somewhere between the driver's seat and its front. The third man of this party of three says the back part of the bus was over the black line when the accident occurred, but is certain it had not passed the other car at the time of the collision. All other witnesses say the car had been passed and that it stopped behind the bus when the accident occurred. He thought the tangent 200 yards long and that the collision took place three-fourths the distance up it. He admits that as the car in which he was riding was on its right side of the road, he could not see well beyond the bus's rear end. He also makes the statement that the bus was in the act of passing a second car from the culvert when the collision occurred. He is the only witness who so testified, and he is wrong. The testimony of these three witnesses in respects not herein mentioned is at variance with that of Mrs. Smith and Mrs. White. The three do not agree with each other as to material facts of which all had equal opportunity to see and observe, and certainly their testimony does not comport with what we find to be the established facts of the case.

Charles Kenney, the bus driver, is 31 years old and has been a successful operator of busses for eleven years. The bus involved in the accident was practically new and its speed limited by a governor to a maximum of 48 miles per hour. He states that after passing the car near the culvert, he pulled over to the right, but on

account of an accumulation of rainwater along the edge of the pavement, he drove with the left wheels a foot or foot and a half south of the black line. This was done to prevent water from splashing on the windshield; and that the bus was going at a rate of between 43 and 45 miles per hour. He states that he observed the coupé as it came over the hill, at which time he had covered about one-third of the distance from the culvert to the hill's crest; that he then pulled the bus to the right side of the road and continued toward the coupé; that the coupé came over the hill "in a curve," astride the black line, moving at about 35 miles per hour; that its brakes were evidently applied as its rear end veered to its left, and the car suddenly shifted to a diagonal position across the center of the road; that at that juncture he began to slow the bus down without forcefully applying the brakes; that the coupé straightened out and turned in different directions three times, striking the bus while making the third turn; that he had continued to pull the bus to its right side and when the collision occurred, both rights wheels were on the dirt; that the dirt sank beneath the wheels and the bus slowly skidded into the ditch. The coupé passed the bus and ran into the ditch on its side of the road and rested not more than 50 feet from the bus. This witness' testimony is corroborated on material points, in whole or in part, by the following named bus passengers: Edwin Nobles, resident of Lincoln parish; W. H. West, resident of Ouachita parish; Mrs. E. J. Geiger, teacher in the high school at Choudrant, La.; Helen Bogan, graduate of the Louisiana State Normal School and teacher in the Castor High School; and Mrs. H. E. Buchanan, resident of Ruston, La. These witnesses have no interest in the outcome of these suits. If their testimony is worthy of belief, defendant's operator's version of the accident, the movements and location of the vehicles at the time of and immediately preceding the impact, is the true one.

Whether the antics of the coupé were due to forceful application of its brakes while describing a circular movement at rapid speed at the hilltop, or whether the driver temporarily lost control of it on account of its crowded condition, coupled with the road's slippery surface, is unnecessary to determine; but, in view of the speed the two vehicles were traveling, the coupé must have been at least 650 feet

from the bus when its brakes were applied. The bus must have slowed down, as its driver testified, because the coupé traveled 400 feet while it covered less than 300 feet to the point of impact. We can see no good reason, if the coupé was under control as its driver says, why it was not stopped before it covered 400 feet.

For the reasons assigned, the judgments appealed from are annulled, reversed, and set aside; and there is now judgment for defendants, rejecting plaintiffs' demands and dismissing their suits, with costs.

DREW, J., dissents.