none of the wills in contest is invalid in that respect.

The judge who decided this case did not give written reasons for his decision; but, from his rulings, which we have described in detail, it is obvious that his reason for rejecting the demand of the plaintiff was that she had no interest in contesting, and hence no right of action to contest, the last will and testament of the deceased, Maurice Feitel. The complaint that the testator appointed the officiating notary public as the attorney at law to open and close his succession is urged against all of the wills, but it is not a cause to annul the wills.

The judgment heretofore rendered by this court having been set aside by the granting of a rehearing, the judgment appealed from is now affirmed. The right is reserved to the plaintiff to apply for a rehearing.

LAND and PONDER, JJ., dissenting.

### SMITH v. TRI–STATE TRANSIT CO. OF LOUISIANA, Inc., et al. and three other cases.

Nos. 5317–5320.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1937.

Rehearing Denied June 1, 1937.

For former opinion, see 171 So. 119.

Hudson, Potts & Bernstein and A. Milling Bernstein, all of Monroe, for appellants.

J. B. Thornhill and S. E. Burgoyne, both of Monroe, for appellee.

### TALIAFERRO, Judge.

Rehearings were granted in these cases to the end that further consideration might be given them because, principally, the court was divided on the paramount question of fact involved, and to reach the conclusion arrived at by the majority, the lower court's 'finding on questions of fact had to be reversed. The record has again been closely studied, resulting in a confirmation of the conclusions heretofore adopted, and which form the bases of our judgments. The well-recognized rule that great weight should be accredited to the trial judge's fact findings should not have the degree of influence in these cases as such rule usually has with appellate courts. These suits were filed in October, 1934. They were tried in June, 1935. Judgments were not rendered therein until May, 1936, over eleven months after conclusion of trial. We are informed in counsel's brief that the testimony was not transcribed prior to rendition of judgments. In view of these facts, there was greater possibility of the trial judge falling into error than would be the case had decisions been made immediately after trial, or with the transcribed testimony before him.

The application for rehearings contains several assignments of error. Nearly all of these refer to conclusions reached as to facts not ultimate. We deem it unnecessary to elaborate upon any of these error assignments, save the following:

"11. The court is in error in not holding that Mrs. Smith, when she reached the crest of the hill, at the western end of the tangent, was faced with an emergency,

not of her own creation, but caused or created by the gross negligence of defendant's bus operator, driving a large, cumbersome, heavily-loaded bus, partly, to say the least, on the wrong side of the road, at a time when and place where the south side of the highway should have been left unobstructed for eastbound traffic.

"12. The court is in error in not holding that the proximate cause of the accident was the deliberate creation of an emergency by the driver of defendant's bus."

The record now presents but one seriously contested point and that one is propounded by the quotation above. To intelligently discuss this question, we shall briefly restate some of the facts of the case and some of the conclusions reached by us and incorporated in our former opinion (171 So. 119). Plaintiff Mrs. Mamie C. Smith, accompanied by her sister and the sister's four small children, occupying a Chevrolet coupé, were making the trip from Winnfield to Monroe, La., late the afternoon of January 20, 1934. It had rained that day and a light drizzle was falling when the collision occurred. Mrs. Smith was driving the car. It collided with defendant's bus, going west, on a 1,160-foot tangent of the concrete highway, as found by us, 400 feet east of the crest of a rise in the road at the western end of the tangent. The situs of the collision is some 18 miles west of the city of Monroe on the Dixie-Overland highway. The gravamen of plaintiffs' suits and the position originally taken by them is that the bus was in violation of law attempting to pass a car on the highway, within a short distance of the crest of the rise or hill over which the coupé came, and that an emergency was thereby created causing Mrs. Smith to lose control of her car, and its collision with the bus the result. We found and held that as the coupé was traveling about 35 miles per hour and the bus about 45 miles, and as the collision occurred 400 feet from the crest of the hill, beyond any doubt the bus was not less than 650 feet from the crest of the hill when the coupé came from over it. We really think it at least 800 feet distant at the time. This conclusion obviously is not debatable for this reason; the coupé traveled 400 feet from the hill's crest to the point of impact. The bus was going at a faster rate, a fortiori had traveled as far or farther to the point

of collision than did the coupé. The coupé's average speed was probably reduced while skidding; that of the bus also because it was driven to the right and onto the shoulder as the coupé approached. These conclusions and these facts destroy the contention that the bus operator was violating the law in passing the car when Mrs. Smith first saw it, the moment she came from over the hill, and it is her contention that it was at this very moment she applied the brakes of the coupé and it began to skid upon the wet and slippery pavement. Anent this question, plaintiffs' counsel in brief say:

"When Mrs. Smith came over the crest of the hill at a speed not exceeding 35 miles per hour, she had her car under perfect control. She so testified and there is nothing to show otherwise. Coming toward her 580 feet away, on the wet, slippery pavement, was a large, heavily loaded bus, seven feet wide, traveling as fast as possible, not less than 48 miles per hour, to say the least, astride the black medial line of the road and blocking her lane of traffic. That this was the situation at that time is not disputed. That this combination of circumstances created an emergency is unquestionable and that it was not brought about by her negligence is equally unquestionable."

We do not know how the distance of 580 feet mentioned in this statement is arrived at. Should this distance be conceded correct, then the bus driver is exonerated from the charge of violating the highway traffic act (Act No. 21 of 1932, § 3, rule 7 (d), which reads:

"The driver of a vehicle shall not overtake and pass another vehicle proceeding in the same direction, approaching the crest of a hill or substantial grade, or upon a curve in the highway or elsewhere, where the view of the driver doing the overtaking or passing is obstructed within a distance of five hundred (500) feet."

There were no obstructions to the view within this distance toward the hill's crest. But, it is argued, the bus was then in the middle of the road, coming rapidly toward Mrs. Smith, and thereby an emergency was created through the carelessness and negligence of the bus' driver, and because of his negligence and carelessness, responsibility for results directly traceable thereto is fastened upon defendants. We adhere to our former conclusion that the bus was more than 650 feet from the

crest of the hill when the coupé came into view. This being true, regardless of its position in the road, can it be reasonably said that an emergency was thereby created? Was Mrs. Smith confronted with a situation justifying such irrational action on her part as to lose control of her car? If not, can it be said that she is not responsible for the results of her indiscretion or imprudence in the handling of the car? The bus was nearly the distance of three city blocks from her and when collided with, its front end was partly on the soft shoulder of the road with little if any of its left rear corner across the black line; and, as stated in our opinion, the collision would have occurred had the entire bus been north of the line.

Blashfield, in his Cyclopedia of Automobile Law and Practice (Permanent Ed.) vol. 4, § 2733, discussing acts done by motorists in emergencies, has this to say:

"The sudden danger rule has no application, where the injured person has ample time to think and act, after discovering the peril and before his injury; and a man cannot recover for damages sustained by himself or his property by his own immediate act through wildly imagining that he is in danger.

"According to some authority, three facts must appear before this doctrine of sudden appearance applies: (1) That the peril or the alarm must be caused by the negligence of the defendant; (2) the apprehension of peril, from the standpoint of the injured person, must have been reasonable; (3) the appearance of danger must have been so imminent as to leave no time for deliberation."

The facts of the case, even as are now admitted by plaintiff, clearly prove that she was not suddenly confronted with so dangerous a situation as to warrant sudden, irresolute action on her part; the appearance of danger was not so imminent "as to leave no time for deliberation."

Corpus Juris, Vol. 42, pp. 891, 892, has this to say on the subject:

"The sudden emergency doctrine is not an exception to the general rule requiring ordinary care in the operation of an automobile, but the emergency is one of the circumstances to be taken into consideration in determining whether the operator has exercised reasonable care, and the doctrine cannot be extended so as to justify the driver in disregarding the rights of others in the effort to save himself.

"Where the automobilist created the emergency or brought about the perilous situation, through his own negligence, he cannot avoid liability for an injury on the ground that his acts were done in the stress of emergency. * * *

"Where there was ample time and space to avoid an accident, the sudden emergency rule does not apply."

American Jurisprudence, vol. 5, p. 600. § 171, cogently elaborates upon the question, as appears from the following excerpt therefrom:

"Where the situation of peril arises because of the driver's own negligence, the emergency rule cannot be invoked in his behalf. Moreover, the emergency rule does not apply if the driver is not in a position of sudden peril, even though he mistakenly thinks he is because he does not use his sense of sight to see what is plainly observable.

"The sudden emergency doctrine is not an exception to the general rule; the question is whether the defendant acted as an ordinarily prudent and careful person would have done under the same circumstances, and the emergency is one of the circumstances contemplated by the rule. If the defendant's course was one that an ordinarily prudent and careful driver put in such a position might have taken, he is relieved from liability; otherwise he is not. The driver's own judgment or impulse is not in any situation, emergent or otherwise, the law's criterion. The driver is exonerated if the course which he takes in an emergency is one which might fairly be chosen by an intelligent and prudent person. If the skidding of a car is the proximate cause of a collision, the owner or operator of the vehicle with which it came into collision is not liable even though he may have been negligent in some respects."

We are of the definite opinion that defendant's operator was free of any negligence as a proximate contributing cause of the accident, and therefore reinstate the judgments formerly rendered in these cases as final decrees of this court.

DREW, J., dissents.